# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2168

_____

|  |  |  |
|---|---|---|
| PepsiCo, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Baird, Kurtz & Dobson LLP; Marion | * | |
| Pepsi-Cola Bottling Co., a Missouri | * | |
| corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 13, 2002
Filed: September 19, 2002

_____

Before RILEY, BEAM and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.


In this expedited appeal, PepsiCo, Inc. (PepsiCo) appeals the district court's order vacating the magistrate judge's order which denied claims of accountant-client privilege and work product protection and compelled production of quality control documents. We reverse the district court's order in part, remanding for reinstatement of the magistrate judge's order as to the accountant-client privilege, and we affirm the district court as to the work product doctrine.

## I.    BACKGROUND

In April 2001, PepsiCo instituted an action in Illinois federal court against Marion Pepsi-Cola Bottling Corporation (Marion), alleging, inter alia, that PepsiCo had a right to terminate its bottling agreement with Marion due to Marion's failure to meet product, performance, and customer service standards.  The current dispute arises from PepsiCo's attempt to obtain documents from Marion's accounting firm, Baird, Kurtz & Dobson (BKD), in Missouri.  BKD is a Missouri firm that has performed financial accounting work for Marion for many years.

Until 1998, Marion's internal auditor performed quality control assessments for the Marion plant, evaluating such things as inventory control, sanitation, product quality, and equipment operation.  When Marion's internal auditor was promoted in 1998, the internal auditor position was left vacant.  Marion assigned some of the internal auditor responsibilities to different departments at Marion.  BKD took over some of the internal auditor duties, such as auditing Marion's plant records to determine if Marion was doing a good job on production documentation and records retention.  BKD provided Marion officers with reports every three to six months.

In June 2000, PepsiCo served Marion with a document request for all documents relating to quality control. Marion responded by producing quality control assessments generated by its internal auditor, but did not include any quality control documents BKD had generated.  Marion owner and CEO, Harry Crisp, explained in a deposition that he had probably destroyed the BKD assessment reports after reviewing them, and that he did not know if the company kept copies.  PepsiCo served Marion with a second set of document requests, and Marion again failed to produce the BKD assessments.  PepsiCo then commenced an ancillary proceeding against BKD in Missouri, serving document and deposition subpoenas on BKD in January 2002.

After BKD and Marion objected to the subpoenas, PepsiCo filed an emergency motion to compel.  Marion and BKD moved jointly to quash the subpoenas, arguing, in part, that (1) all the documents were protected by the accountant-client privilege; and (2) the documents BKD generated after PepsiCo's filing of the underlying lawsuit on August 20, 2001, were protected work product.

A hearing on the motions was held before a magistrate judge.  BKD and Marion reiterated their claims that the BKD quality control assessments were privileged.  With regard to the work product doctrine, BKD and Marion argued that any assessments conducted after August 20, 2001, when Marion retained BKD to assist in the pending litigation, constituted protected work product.  At the conclusion of the hearing, the magistrate judge requested sample copies of the assessments being withheld.  BKD submitted for in camera inspection its engagement letter with Marion, a BKD report regarding Marion's manufacturing processes and a sample BKD attestation report, which reports, BKD maintained, were generally representative of the documents subject to privilege.

The magistrate judge ordered Marion and BKD to produce the requested assessments.  BKD and Marion objected to the order under Federal Rule of Civil Procedure 72(a).[1]  The district court vacated the magistrate judge's order, finding the quality control documents were protected by accountant-client privilege and BKD's assessments after August 20, 2001, constituted protected work product.

---

[1]Rule 72(a) states: "Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order . . . .  The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."

## II.    JURISDICTION

We have jurisdiction to hear this appeal under the collateral order doctrine because this ancillary proceeding involves a nonparty to the underlying action, and the underlying action is pending in a district court outside this Circuit.  See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) (where ancillary proceeding involves nonparty and main action is pending outside circuit, appellants would have no means outside immediate appeal to obtain review).

## III.    DISCUSSION

### A.    Accountant-Client Privilege

Illinois law declares that "[a] public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a public accountant."  225 Ill. Comp. Stat. § 450/27.  The magistrate judge found that BKD's quality control assessments were not protected because they were not within the scope of services provided in BKD's capacity as a public accountant.  Illinois defines a public accountant as a person in the profession or business of giving "any report expressing or disclaiming an opinion on a financial statement based on an audit or examination of that statement, or expressing assurance on a financial statement." 225 Ill. Comp. Stat. § 450/8.  The magistrate judge concluded that BKD's assessments were not opinions on financial statements and were nonfinancial consulting services unprotected by the accountant-client privilege.

In vacating the magistrate judge's order, the district court stated that the determining factor in applying the privilege in Illinois was whether the client reasonably expected that the information would remain confidential, and found that Marion had held such expectations.  The district court relied upon two Illinois cases interpreting the accountant-client privilege, which addressed solely whether the documents were confidential.  See In re October 1985 Grand Jury No. 746, 530 N.E.2d 453, 454 (Ill. 1988) (seeking tax returns prepared by accountant) and FMC

Corp. v. Liberty Mut. Ins. Co., 603 N.E.2d 716, 719 (Ill. Ct. App. 1992) (seeking accountant-provided financial audit services). We do not believe these cases are conclusive, because both involved documents which were clearly financial. PepsiCo raises a new issue, namely, whether the Illinois accountant-client privilege protects documents generated by an accountant rendering nonfinancial consulting services. We conclude it does not.

The Supreme Court has directed that courts must narrowly construe privileges, and statutes creating them, and must avoid suppressing probative evidence. See Univ. of Pa. v. EEOC, 493 U.S. 182, 189 (1990); Baldrige v. Shapiro, 455 U.S. 345, 360 (1982) (while privilege may be created by statute, privilege must be strictly construed to avoid construction that would suppress otherwise competent evidence).

We conclude that a narrow construction of § 450/27, read in conjunction with § 450/8, mandates a distinction between protected accounting services involving opinions on financial statements and unprotected nonfinancial consulting services. Our decision is also guided by cases construing the attorney-client privilege, which suggest the accountant-client privilege must likewise have a limited scope. See, e.g., United States v. Horvath, 731 F.2d 557, 561 (8th Cir. 1984) (attorney-client privilege applies only to confidential communications made to facilitate legal services, and does not apply where lawyer acts as conduit for client funds, scrivener, or business advisor); cf. Simon v. G.D. Searle & Co., 816 F.2d 397, 403 (8th Cir. 1987) (legal departments are not citadels where information may be placed to defeat discovery; business documents sent to corporate officers are not automatically privileged).

Relying primarily on the client's reasonable expectations of confidentiality would cloak far too many reports and records with the armor of privilege. Most clients reasonably expect the accountant will keep virtually all of their business and personal records secret. A narrow reading of the Illinois accountant-client privilege

dictates that the confidential reports must also arise from accounting services involving opinions on financial statements.

We conclude the district court erred in finding BKD's quality control assessments were protected accounting services and therefore fell within the scope of the Illinois accountant-client privilege. The assessments did not involve public accountant opinions on any financial statements. We further recognize the same type of assessments were previously prepared by Marion's internal auditor. Thus, we reverse the decision of the district court and remand for reinstatement of the magistrate judge's order directing BKD to produce the assessments generated before the lawsuit was filed.

## B.    Work Product Doctrine

In addition to claiming the quality control assessments were protected under the accountant-client privilege, Marion also claimed the assessments were protected work product. The magistrate judge concluded that work product protection was inapplicable to those assessments created before PepsiCo filed suit in 2001, because they were not created in anticipation of litigation. The magistrate judge did not address the status of the assessments created after August 2001, when Marion used BKD's services specifically in relation to the ongoing litigation. Upon Rule 72(a) review, the district court held that the assessments created after August 2001 were protected work product because BKD prepared them to address PepsiCo's claims in the underlying litigation. The district court further concluded that PepsiCo had not shown a substantial need for these later assessments.

On appeal, PepsiCo argues that the district court erred in finding the post filing assessments were made in anticipation of litigation, because the evidence showed the post-August 2001 assessments were not categorically different from those BKD had previously prepared. PepsiCo also contends that, in any case, the assessments were

discoverable under Fed. R. Civ. P. 26(b)(3) because it had shown a substantial need for the documents.

This Court applies federal law to work product claims. See Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) (en banc). In order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation. See Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118-19 (8th Cir. 1983). Work product is not discoverable unless the party seeking discovery has a substantial need for the materials and cannot obtain the substantial equivalent through other means. See Fed. R. Civ. P. 26(b)(3). We conclude that the district court did not err in determining that Marion and BKD had met their burden with regard to the post-August 2001 assessments, and that PepsiCo had not shown a substantial need for the records. See Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th Cir. 1998). Thus, we affirm the district court's decision as to the application of the work product doctrine.[2]

## IV.   CONCLUSION

We reverse the district court's order to the extent it held the assessments were protected by the accountant-client privilege and remand for reinstatement of the magistrate judge's order denying the accountant-client privilege. We affirm the district court's order to the extent it held the post-August 2001 assessments were protected work product.

---

[2]We do not address discovery issues that may arise in the event that Marion intends to use one of BKD's accountants as a witness or an expert witness at trial. See, e.g., Fed. R. Civ. P. 26(a)(2); In re Pioneer Hi-Bred Int'l, 238 F.3d 1370, 1375 (Fed. Cir. 2001) (applying Eighth Circuit law on privileges and holding that documents and information disclosed to an expert in connection with testimony are discoverable whether or not the expert relies on the documents and information in preparing the expert report).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.